IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THE HOCKEY CLUB OF THE OHIO VALLEY, LLC
and THE ECHL,

      Plaintiffs,

v.                                        Civil Action No. 5:12CV161
                                                           (STAMP)
EAGLE MARKETING GROUP, L.L.C.,

      Defendant.


### MEMORANDUM OPINION AND ORDER
### CONFIRMING PRONOUNCED ORDER OF THE COURT
### GRANTING PLAINTIFFS' MOTION FOR SUM CERTAIN JUDGMENT,
### OR IN THE ALTERNATIVE, AN EVIDENTIARY HEARING,
### AND AWARDING GENERAL DAMAGES, TREBLE DAMAGES
### AND ATTORNEYS' FEES AND COSTS


I. Background

This trademark infringement action was filed by the plaintiffs, The Hockey Club of the Ohio Valley, LLC ("HCOV") and The ECHL, in this Court in October 2012. In their complaint, the plaintiffs argue that the defendant, Eagle Marketing Group, L.L.C. ("Eagle Marketing"), used the trademark of the Wheeling Nailers in its calendar in order to generate advertising revenue. The plaintiffs contend that the defendant used the Wheeling Nailers trademark to sell marketing advertisements to local retailers of whom the plaintiffs would have generated advertising revenue. Further, the plaintiffs asserted that this was not the first time that the defendant had engaged in such conduct and that the use of the Wheeling Nailers trademark was intentional.

A 21-day summons was issued in December and was returned executed as to the defendant.  After the 21-day deadline expired without the defendant answering the plaintiffs' complaint or participating in the action otherwise, the plaintiffs filed a motion for entry of default.  The Clerk of Court entered default as to Eagle Marketing thereafter.  The plaintiffs then filed a motion for sum certain judgment or, in the alternative, for an evidentiary hearing to determine damages.

In their motion, the plaintiffs provided four exhibits to support their request for general damages, treble damages, and attorneys' fees and costs.  These exhibits included (1) a copy of the calendar that the defendant used to obtain marketing revenue with the Wheeling Nailers' likeness; (2) an affidavit from Craig Bommer ("Bommer"), the Vice President of Business Operations for the Wheeling Nailers, stating that the cost of the advertisements in the calendar would range from $500.00 for a small advertisement to $700.00 for a large advertisement; (3) an affidavit from Kenneth C. Otis, III ("Otis"), counsel for ECHL, who had written a "cease and desist" letter to the defendant previously for infringing on the trademarks of another ECHL team and stating that the use of the Wheeling Nailers trademark was not the first instance where the defendant used an ECHL affiliate hockey team to sell advertising; and (4) a billing statement summarizing the attorneys' fees and costs of this litigation.

2

Despite the exhibits included in the plaintiffs' motion, this Court granted the motion, in the alternative, for an evidentiary hearing which was held on December 9, 2013.  At the hearing, the plaintiffs presented two witnesses and provided further affidavits to the Court.

The first witness, Timothy Arthur Roberts ("Roberts"), was the Director of Hockey Operations in 2012 for the plaintiff, HCOV. Roberts testified that while he was employed by HCOV, he oversaw sales calls and had a firm grasp on the marketing efforts of HCOV. He stated that while he was having lunch at Nail City Brewing Company in Wheeling, West Virginia,[1] he saw a Wheeling Nailers' calendar and thereafter asked Bommer if HCOV had sold the advertisements included in the calendar.  Bommer stated HCOV had not.  Roberts further testified that he then called three of the businesses who had advertised in the calendar that he knew either professionally or personally – Fahey Insurance, Figaretti's Restaurant, and Rob Frank with Pickles' Grog and Grill[2] – about the advertisements and each said that the defendant had contacted them about advertising and had also used Roberts' name as a reference during their sales pitch.  Roberts then contacted the ECHL's legal

_____

[1]This is a restaurant in Wheeling, West Virginia which is now known as River City Restaurant and Banquet Facility.

[2]These are three businesses located in Wheeling, West Virginia.  The advertisements that they placed are visible in the exhibit included in the plaintiffs' motion.  ECF No. 11-1.

counsel to inquire as to whether the defendant was authorized to use the Wheeling Nailers trademark; ECHL's legal counsel stated it was not. Further, ECHL reported to Roberts that they had given a cease and desist letter to the defendant because of similar conduct with other teams in the league. Roberts then clarified that ECHL owns the Wheeling Nailers trademark.

The plaintiffs then called Bommer to testify. Bommer first indicated that he has been involved in the advertising sales for HCOV for eight years. He testified that the Wheeling Nailers generated no revenue from the defendant's calendar and that a majority of the businesses in the advertisements were clients that have not advertised with the Wheeling Nailers (two had advertised with the Wheeling Nailers, Mountain Mama's Kayak and Bike Rentals ("Mountain Mama's") and River City Restaurant and Banquet Facility. Further, Bommer stated that Mountain Mama's had contacted him after placing the advertisement with the defendant and informed Bommer of the agreement with the defendant. Finally, Bommer testified that the Wheeling Nailers had lost potential advertising revenue that would have equaled $9,300.00 if the Wheeling Nailers had charged their advertising rates – $500.00 per small advertisement and $700.00 per large advertisement.

Plaintiffs' counsel then asserted that the plaintiffs were entitled to damages under 15 U.S.C. § 1117 because the defendant had willfully infringed on the Wheeling Nailers trademark. Counsel

contends that losses incurred are appropriate and that in the affidavit for ECHL's legal counsel, it sets forth that the defendant has done this before.  Further, counsel indicates that six or seven months after the plaintiffs filed this suit, the Illinois State Attorney General filed suit against the defendant for similar trademark infringement of a college sports team. Counsel further asserts that the plaintiffs entered this litigation without knowing if it would lead anywhere in order to deter further infringing behavior by the defendant.  Counsel stated that through the exhibits provided, the plaintiffs had shown that they were entitled to $9,300.00 in general damages for loss of advertising revenue, $5,994.00 in reasonable attorneys' fees and costs of litigation, and $33,894.00 in treble damages (which is not inclusive of attorneys' fees and costs).[3]

Based on the reasons that follow, the plaintiffs' motion for a sum certain judgment is granted.

## II.   Applicable Law

To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a).  Under Rule 55(a), an entry of default is appropriate "[w]hen a party against

---

[3]Although the plaintiffs stated during the hearing that the treble damages amounted to $33,894.00, the Court believes that the actual amount should be $27,900.00 which is three times the general damages.   The $33,894.00 number that the plaintiffs cited was likely the amount of treble damages plus the attorneys' fees and costs of litigation.   Thus, this Court is only adjudging the amount of treble damages to equal $27,900.00.

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R. Civ. P. 55(a). Once default is entered by the clerk, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought. If the plaintiff's claim is for "a sum certain" or a "sum that can be made certain by computation," the plaintiff may seek entry of default judgment from the Clerk under Rule 55(b)(1). However, in cases in which the plaintiff seeks a form of relief other than liquidated damages, Rule 55(b)(2) requires plaintiff to seek an entry of default judgment from the court.

It is well-established in the United States Court of Appeals for the Fourth Circuit that default judgments are to be granted sparingly. See, e.g., Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987). "[T]rial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). However, default judgment is available "when the adversary process has been halted because of an essentially unresponsive party." S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980)).

A defaulting party admits the plaintiff's well-pleaded factual allegations in the complaint, in contrast to the allegations regarding damages. Ryan v. Homecomings Fin. Network, 253 F.3d 778,

780 (4th Cir. 2001).  The party in default, however, is not held to admit conclusions of law.  Id.

### III.  Discussion

A.  Federal Rule of Civil Procedure 55(b)(2)

The plaintiffs seek damages under Rule 55(b)(1), or in the alternative, under Rule 55(b)(2).  This Court proceeded under Rule 55(b)(2) because an evidentiary hearing was required in order to determine the applicability of 15 U.S.C. § 1117 and also to determine whether the factors required for a court to award attorneys' fees and costs were met.  Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978).  The Court must consider, in determining the damages in a default judgment, that "[a] judgment by default shall not be different in kind or exceed in amount that prayed for in the demand for judgment."  Fed. R. Civ. P. 54(c).  Thus, this Court may not enter a judgment that is "in excess of that demanded in the complaint."  Eddins v. Medlar, 881 F.2d 1069 (4th Cir. 1989).  However, "[a]lthough [the] rule governing default judgment limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint, it does not require plaintiff to have demanded a sum certain in order to recover on default."  Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361 (E.D.N.Y. 2005).

In this case, the plaintiffs requested relief in the form of damages for profits realized by the defendant in using the Wheeling

Nailers trademark, treble damages, and reasonable attorneys' fees and the costs of this litigation.  Accordingly, it is in this Court's discretion to award the plaintiffs all the damages they have requested in their motion under Rule 55(b)(2) because they requested the same damages (and more)[4] in their complaint and thus the defendant was on notice of the possible damages that could be awarded by this Court.

B.    <u>Title 15, United States Code, Section 1117</u>

Under subsection (a) of 15 U.S.C. § 1117, a plaintiff may recover, subject to the principles of equity, (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The plaintiff only has to prove the defendant's sales; the defendant has the burden of disproving the claims by the plaintiff.  <u>Id.</u>  Additionally, the Court cannot enter judgment for any sum above three times the actual damages.  <u>Id.</u>  If this Court finds that the amount of recovery based on profits is inadequate or excessive, the Court may in its discretion enter a judgment for a sum that it finds to be just based on the circumstances of the individual case.  <u>Id.</u>  Finally, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  <u>Id.</u>

---

[4]Along with the damages the plaintiffs have sought in this motion, the plaintiffs had also sought declaratory relief and punitive damages in their complaint.

Under subsection (b), however, in assessing damages under subsection (a), the Court shall enter judgment for three times the profits or damages, whichever is greater, together with reasonable attorneys' fees, if the defendant intentionally used a trademark in connection with the "sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(b). Subsection (b) allows for an exception to awarding those damages only if there are "extenuating circumstances" that counsel against awarding such damages. Id.

The plaintiffs claim general damages, attorneys' fees and costs, and treble damages under 15 U.S.C. § 1117(b). Because the Wheeling Nailers trademark was used by the defendant in connection to selling advertisements for a calendar distributed by the defendant, this Court finds that the plaintiffs have correctly pled this motion under § 1117(b). The three types of damages will thus be discussed in turn.

1. General Damages

As stated previously, the plaintiffs only have to prove the defendant's sales and the defendant has the burden of disproving the plaintiffs' claims. 15 U.S.C. § 1117(a). In this case, the defendant has failed to appear and thus this Court only has what the plaintiffs have provided as evidence of what the defendant's sales likely were for the calendar.

9

The plaintiffs have provided an affidavit and testimony from Bommer, as discussed earlier.  Bommer has stated that small advertisements sell for $500.00, while large advertisements sell for $700.00.  Thus, because there are six small advertisements and nine large advertisements that appear on the calendar for the Wheeling Nailers, Bommer concluded that the revenue lost by the plaintiffs was $9,300.00.

This Court finds that the plaintiffs' claim of $9,300.00 is reasonable given the evidence provided.  Further, the defendant did not respond to the complaint and thus has foregone the opportunity to argue that it charged less or more for the advertisements.  Accordingly, this Court will award the plaintiffs general damages in the amount of $9,300.00.

2.   <u>Treble Damages</u>

The plaintiffs have also claimed that they are entitled to a trebling of the general damages under § 1117(b).  The plaintiffs claim that the defendant willfully infringed on the Wheeling Nailers trademark and therefore its actions were intentional.

"Where . . . a registrant seeks the mandatory treble damages and attorneys' fees provided for in § 1117(b), the plaintiff must prove the defendants' intent to infringe." <u>Chanel, Inc. v. Italian Activewear of Florida, Inc.</u>, 931 F.2d 1472, 1476 (11th Cir. 1991). "Willful infringement may justify an enhancement, . . . [however,] compensation must be the basis for the enhancement, and [an] . . .

10

enhancement based on willful conduct must not be punitive in nature." Ramada Franchise Sys., Inc. v. Boychuk, 283 F. Supp. 2d 777, 791–92 (N.D.N.Y. 2003), aff'd, 124 F. App'x 28 (2d Cir. 2005).

The plaintiffs provided evidence that the defendant intentionally infringed on the Wheeling Nailers trademark. The plaintiffs provided the affidavit of Otis, an attorney that represents ECHL in trademark issues, as an exhibit with their motion. ECF No. 11-3. Otis attested that he has sent a "cease and desist" letter to the defendant for infringing on the trademarks of an ECHL team. Otis further states that the Wheeling Nailers' calendar, at the center of this controversy, is not the first instance where the defendant used an ECHL affiliate hockey team to sell its advertising and calendars without compensating the affiliate.

The plaintiffs also provided the testimony of Roberts, as discussed previously. Roberts testified that after seeing the calendar, he called some of the businesses that had advertised in the calendar and they informed him that the defendant had specifically used Roberts as a reference for the sales calls. Further, Roberts confirmed the allegations of prior bad conduct by the defendant made by Otis in his affidavit. Finally, through plaintiffs' counsel, this Court learned that the Illinois State Attorney General has brought suit against the defendant for

trademark infringement of a college team in Illinois for similar use of the team's trademark.

This Court finds the affidavits and testimony of the witnesses credible, and further finds that there was intent on the part of the defendant to infringe on the Wheeling Nailers trademark.  The defendant used Roberts' name without permission, likely to bolster its chances of making a sale within the local community, and thus showed intent to defraud those clients and also to infringe on the Wheeling Nailers trademark.  Further, because this is not the first instance of the defendant using such a scheme, it is unlikely that the defendant was unaware of the fact that it was using the trademark illegally.  Accordingly, this Court finds that there was intent on behalf of the defendant and thus the plaintiffs are entitled to a trebling of the damages.

Additionally, no extenuating circumstances have been brought to light, and thus this Court finds that there are none that would not allow the trebling of damages.  Thus, because the damages amount to $9,300.00, without taking into account attorneys' fees and costs of the litigation, the plaintiffs are awarded $27,900.00 in trebled damages.

     3.   Attorneys' Fees and Costs

The plaintiffs provided three exhibits to support an award of attorneys' fees and costs.  First, the plaintiffs provided a summary of attorneys' fees and costs for this litigation.  ECF No.

11-4.   Further, the plaintiffs entered into evidence during the motion hearing two affidavits, one from an attorney in the Wheeling, West Virginia legal community, David A. Jividen ("Jividen"), and one from counsel for the plaintiffs, Gerald Lofstead, III ("Lofstead").   ECF Nos. 14-1 and 14-2.

The Jividen affidavit states that the affiant is a licensed attorney in West Virginia who has been practicing law for 34 years in West Virginia.   He further states that he has reviewed the pleadings and the billing statement provided to this Court.   He attests that (1) Lofstead is an upstanding member of the legal community; (2) the time and labor expended by Lofstead is reasonable given the nature of the case; (3) the hourly rate charged by Lofstead of $175.00 per hour is both fair and reasonable in the local community and is actually low considering the nature of the case; and (4) the current litigation, because it is a trademark violation case, is not desirable within the local legal community because it requires specialized knowledge on behalf of legal counsel.

Lofstead's affidavit states that he is a licensed attorney in the state of West Virginia and has been practicing law for 16 years in West Virginia.   Further, he states that action in this matter had to occur immediately because the plaintiffs were losing revenue due to the defendant's production of the calendar at the beginning of the Wheeling Nailers' season.   He also attests that his

13

expectations for this case were to have the defendant cease and desist its use of the Wheeling Nailers trademark and to obtain any lost profits that plaintiffs incurred because of the defendant's violation.   Finally,  he  states  that  he  has  maintained  a professional relationship with the plaintiffs for a period of one year prior to the commencement of the current action and has had a professional relationship with the Wheeling Nailers for over three years prior to the commencement of the current action.

This Court must consider several factors before it may award attorneys' fees and costs to a party.  The United States Court of Appeals for the Fourth Circuit has set forth the following factors to determine the reasonableness of the attorneys' fees and costs sought by a party: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.   Barber, 577 F.2d at 226.

14

The plaintiffs have clearly shown that these factors are met. First, the summary of expenses provided by the plaintiffs show the time and labor expended in this litigation. Second and third, the Jividen affidavit discusses the fact that trademark infringement cases raise difficult questions for legal counsel to address and require specialized knowledge. Next, as this Court stated during the hearing, it is likely that Lofstead, who has been practicing law for 16 years, had to forego taking on other legal matters because of his participation in this trademark infringement action which would have likely dealt with complex legal issues. In addition, as stated in the Jividen affidavit, $175.00 per hour is reasonable and fair and is likely less than what might be expected for this type of litigation. Further, Lofstead's affidavit provides his expectations for this litigation which included the plaintiffs being placed in the position they would have been in financially but for the defendant's trademark infringement. Accordingly, the plaintiffs would be worse off if they had to pay the expense of attorneys' fees and costs.

Additionally, Lofstead's affidavit states that there were time restrictions in pursuing this litigation because of the impending start of the Wheeling Nailers' season and the fact that the defendant was distributing its calendars at that time. Further, the amount in controversy would likely have been much greater if this case had not resulted in a default judgment. The plaintiffs

claimed much more in damages in their complaint (their prayer for relief included punitive damages), thus the results from this Court granting attorneys' fees and costs would actually be a better outcome for the defendant than if the plaintiffs had obtained all the relief that they initially requested in their complaint. Also, the Jividen affidavit and Lofstead affidavit provide that Lofstead is well regarded in the legal community and has been practicing for a number of years, thus he has the experience and reputation that would justify the amount that was charged for his services in this litigation. Moreover, the Jividen affidavit stated that trademark infringement cases are undesirable in the legal community because of the expertise that they require on behalf of the attorneys who take them. Likewise, this Court notes that because of the bad faith that may accompany infringement cases they are also undesirable. In addition, the Lofstead affidavit provides that he has worked with the plaintiffs for over a year and with the Wheeling Nailers for over three years, accordingly, he has built a relationship with the plaintiffs deserving of the legal fees the plaintiffs are requesting. Finally, as the Jividen affidavit attested, $175.00 per hour is reasonable and fair for this type of case and is actually a fee that he would consider on the low end for a trademark infringement case.

Because the plaintiffs have met all the factors of Barber, this Court finds that attorneys' fees and costs should be awarded

16

to the plaintiffs in this action.  Additionally, as was discussed in the treble damages section, this Court finds that the plaintiffs have shown that the defendant acted intentionally in infringing on the Wheeling Nailers trademark and thus are entitled to attorneys' fees and costs under § 1117(b).  Moreover, to reiterate, no showing of extenuating circumstances on behalf of the defendant has been shown.  Thus, based on the evidence provided by the plaintiffs, they are entitled to $5,994.00 in attorneys' fees and costs.

## IV.  <u>Conclusion</u>

For the reasons stated above, the plaintiffs' motion for a sum certain judgment or, in the alternative, an evidentiary hearing is GRANTED.  Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and 15 U.S.C. §§ 1117(a) and 1117(b), the plaintiffs are hereby awarded general damages in the amount of $9,300.00, a trebling of the general damages in the amount of $27,900.00, and attorneys' fees and costs in the amount of $5,994.00.  Thus, the plaintiffs are granted a total default judgment of $33,894.00 with post-judgment interest to be calculated from the date of the original judgment, December 9, 2013, pursuant to 28 U.S.C. § 1961. The Clerk is DIRECTED to enter a judgment order pursuant to Federal Rule of Civil Procedure 58 which reflects this award.  It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

17

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    December 11, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE